IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILFRED HAYNES              :
          Petitioner   :
    VS.                      :        3:CV-05-0339
                                       :        (CHIEF JUDGE VANASKIE)
DEPARTMENT OF HOMELAND      :
SECURITY                    :
          Respondent  :

## MEMORANDUM

At issue in this habeas corpus proceeding is whether an alien ordered to be removed from the United States on the basis of his criminal convictions may be incarcerated for a prolonged period of time without an opportunity to be heard on the matter of conditional release from confinement because execution of the removal decree has been stayed by judicial order. Concluding that an alien in such a circumstance has a constitutional right to a meaningful individualized determination of his status pending adjudication of the validity of the removal order, I will grant the habeas petition conditionally, directing that Petitioner be released from confinement if he does not receive the type of meaningful review contemplated by 8 C.F.R. § 241.4(i) within sixty (60) days from the date of this decision.

I.    BACKGROUND

Pro se petitioner Wilfred Haynes, a native and citizen of Barbados, alleges that he entered the United States on August 29, 1980 on a tourist visa, and that his status was adjusted

to lawful permanent resident in 1983. (Habeas Pet. at ¶ 10.) On March 21, 1984, Haynes was convicted of criminal possession of marijuana in the second degree, in violation of Section 221.25 of the New York State Penal Law, and criminal possession of a weapon in the third degree for carrying a loaded revolver in violation of Section 265.02 of the New York State Penal Law. (Id.) Haynes was sentenced to five years probation. (Gov't Ex. G.)

On April 21, 1995, removal proceedings against Haynes were commenced by the Immigration and Naturalization Service ("INS").[1] (Gov't Ex. A.) The INS charged that Haynes was subject to removal from the United States under sections 241(a)(2)(C) and 241(a)(2)(B)(i) of the Immigration and Nationality Act.[2] The record before this Court does not explain the delay

---

[1] On March 1, 2003, the functions of the INS were assumed by the Department of Homeland Security. Within the Department, the Bureau of Immigration and Customs Enforcement now has the duty of investigating and enforcing immigration laws within the borders of the United States. For the sake of simplicity, this opinion will refer to the INS as the immigration enforcement authority. Moreover, for the sake of clarity, the Respondent in this proceeding will be referred to as the INS.

[2] INA § 241(a)(2)(C), 8 U.S.C. § 1227(a)(2)(C), states:

> Certain firearm offenses. Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of title 18) in violation of any law is deportable.

INA § 241(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), provides:

> Any alien who at any time after admission has been convicted of a

2

in the disposition of the initial deportation charges.

In 2002, Haynes was arrested for possession of a controlled substance. On January 28, 2003, he was sentenced to a prison term of two to four years for criminal possession of a controlled substance in the fifth degree under section 220.06(5) of the New York State Penal Code. (Gov't Ex. B.) Haynes avers that he was taken into custody by the INS on January 28, 2004, upon completion of his sentence. (Habeas Pet. at ¶ 12.) On March 10, 2004, the INS filed an additional charge of inadmissibility/deportability under § 241(a)(2)(B)(i) of the INA due to the 2003 controlled substances conviction. (Gov't Ex. C.)

Haynes applied for a waiver of deportation under former § 212(c) of the INA, 8 U.S.C. § 1182(c), and for cancellation of removal under § 240A of the INA, 8 U.S.C. § 1229b(a). (Gov't Ex. D.) On May 12, 2004, an Immigration Judge denied Haynes's claims as a matter of discretion and ordered him removed. (Gov't Ex. D & E.) Although Haynes initially waived appeal of the decision to the Board of Immigration Appeals, he later filed a notice of appeal that the Board accepted. (Gov't Ex. D.) The Board then dismissed Haynes's appeal on July 7, 2004, noting that he had withdrawn the appeal. (Gov't Ex. D & F.) Haynes filed a motion to reopen, claiming that he had again changed his mind and wished to pursue an appeal. (Gov't

---

> violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

Ex. D.) By order dated September 8, 2004, the Board denied the motion. (Gov't Ex. G at 2.)

On September 27, 2004, Haynes filed in this Court an "Emergency Petition for Writ of Habeas Corpus" pursuant to 28 U.S.C. § 2241, seeking a stay of removal. (Haynes v. Department of Homeland Security, No. 3:04-CV-2142 (M.D. Pa.)  On September 28, 2004, a stay of deportation was granted.[3]

On October 14, 2004, a records review was conducted by the INS to determine whether detention should be continued. (Gov't Ex. G.)  It does not appear that Haynes was given advance notice of the review.  It is clear, however, that he was not afforded an opportunity to appear before the decisionmakers to make a plea for release.  Under the Officer Comments/Analysis & Recommendation section of the post custody review form, it states:

> This Subject is under a Stay of Deportation.  The subject has a
> long and sometime violent criminal history.  This Officer has
> obtained many travel documents form [sic] Consulate of Barbados.
> This Officer is in possession of the subjects [sic] Birth Certificate
> and other documentation needed to obtain the travel document.
> This officer recommends the subject be held in custody until the
> Stay of Deportation is lifted and a travel document is obtained.

(Id. at 6.) On October 29, 2004, the "Deciding Official" directed that Haynes remain in custody. (Id.)

---

[3] The stay was still in effect on June 29, 2005, when the challenge to the validity of the removal order was transferred to the United States Court of Appeals for the Third Circuit pursuant to the Real ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 311 (2005).  The INS may now seek to have the stay of removal vacated by the Court of Appeals.

Haynes states that the written decision ordering his continued detention was served upon him on November 12, 2004.  (Habeas Pet. at ¶ 15.)  He also asserts that authority over his detention was transferred to the Headquarters Post-Order Detention Unit, but that no opportunity for release pending the outcome of his challenge to the removal order has been afforded.  (Id. at ¶ 16.)

On February 17, 2005, Haynes filed this habeas corpus proceeding under 28 U.S.C. § 2241 challenging his continued detention.  The INS answered the Petition on April 11, 2005, and Haynes filed a traverse on April 22, 2005.  The petition is ripe for disposition.

## II.     DISCUSSION

The INS frames the issue before the Court  as follows: "Whether Haynes is entitled to release from custody where he has a stay of removal which prevents his removal from the United States."  (Response to Pet. at 4.)  In support of its position that release is not available to Haynes, the INS asserts that he is being detained pursuant to § 241 of the INA, 8 U.S.C. § 1231.  It points out that section 241(a)(2), 8 U.S.C. § 1231(a)(2), prohibits the release of an alien who is deportable under 8 U.S.C. § 1227(a)(2), such as Haynes, during the "removal period."

Under 8 U.S.C. § 1231(a), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."  Id. § 1231(a).  This is known as the "removal period."  Id.  As to the date when the 90-day removal period begins,

5

section 1231(a)(1)(B) provides:

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

The INS contends that because a stay of removal was issued on September 28, 2004, the "removal period has been tolled." (Response to Pet. at 6.) Thus, argues the INS, "Haynes is still within the removal period . . . [and] [a]s such, Haynes is not eligible for release at this time." (Id.) The INS observes that, by procuring a stay of removal, Haynes bears responsibility for his current detention. (Id. at 7-8.)

Essentially, it is the position of the INS that Haynes remains within the ninety (90) day removal period, the running of which has been suspended as a consequence of the stay of removal. The INS uses the term "tolling" in support of its argument that Haynes remains within the "removal period," during which detention is mandatory. This position, however, does not find support in the statutory scheme. Section 241(a)(1) does not use the term "tolling" to describe the effect of a stay of removal. On the contrary, the legislation provides that, when a stay of removal has been ordered, the ninety (90) day removal period begins to run only when the court entering the stay issues a "final order." 8 U.S.C. §1231(a)(1)(B)(ii). Consistent with the statutory language prescribing the commencement date for the removal period, INS

regulations provide, in pertinent part, that the removal period "shall begin on the <u>latest</u> of the following dates: . . . (B) If the . . . court has ordered a stay of the alien's removal, the date on which, consistent with the court's order, the removal order can be executed . . . ." 8 C.F.R. § 241.4(g)(1)(i)(B) (emphasis added). No final order on the merits of Haynes's claims has yet been entered. Thus, under both the statute and the regulations, the removal period has yet to begin.[4]

It has been recognized that "where a court issues a stay pending its review of an administrative removal Order, the alien continues to be detained under [INA] § 236 until the court renders its decision." <u>Wang v. Ashcroft</u>, 320 F.3d 130, 147 (2d Cir. 2003). Section 236(c), 8 U.S.C. § 1226(c), requires the Attorney General to take into custody certain classes of criminal aliens, including aliens with convictions of the nature of Haynes's, and generally

---

[4]Section 241(a)(1)(C) of the INA, 8 U.S.C. § 1231(a)(1)(C), does provide that "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period" where the alien refuses to cooperate in securing travel or other pertinent documents or otherwise acts to prevent removal. The statute does not equate the procurement of a judicial order staying removal with active prevention of removal. Indeed, legislation equating the exercise of a constitutional right to seek redress in the courts with refusing "to make timely application in good faith for travel or other documents necessary to the alien's departure or . . . act[ing] to prevent . . . removal," 8 U.S.C. §1231(a)(1)(C), would be problematic. See <u>Abukar v. Ashcroft</u>, No. Civ. A. 01-242, 2004 WL 741759, at *3 (D. Minn. March 17, 2004)(rejecting as "untenable" the argument that the alien had "acted to prevent his removal" by procuring a stay of removal, and directing the release of the alien pending the outcome of his challenge to the validity of the removal Order); <u>Oyedeji v. Ashcroft</u>, 332 F. Supp. 2d 747, 753 (M.D. Pa. 2004)("The price for securing a stay of removal should not be continuing incarceration."). Section 241(a)(1)(C) contemplates action not taken in good faith by the alien, and does not encompass action taken by the alien to obtain judicial review of a cognizable claim.

prohibits their release unless essential to a criminal investigation. In Demore v. Kim, 538 U.S. 510, 513 (2003), the Court sustained the authority of Congress to mandate detention of criminal aliens during administrative removal proceedings, but did not address the question presented here: whether the due process clause of the Fifth Amendment requires that a criminal alien be afforded an opportunity to be heard on the question of conditional release pending judicial review of an administrative removal order, the execution of which has been stayed by judicial order. The INS argument, premised upon the erroneous contention that Haynes's detention is mandated because he remains within the removal period, ignores this constitutional issue.

The United States Supreme Court "has repeatedly recognized that 'if an alien is a lawful permanent resident of the United States and remains physically present here, he is a person within the protection of the Fifth Amendment.'" Tineo v. Ashcroft, 350 F.3d 382, 398 (3d Cir. 2003)(citation omitted). In Zadvydas v. Davis, 533 U.S. 678 (2001), the United States Supreme Court recognized the constitutional implications of prolonged detention for those subject to a valid order of removal. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "[G]overnment detention violates that Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, or, in certain special and 'narrow' non-punitive 'circumstances,' where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally

protected interest in avoiding physical restraint.'" Id. (citations omitted).  The fact that the alien has procured a stay of removal does not undermine the due process bedrock principle that there must be a "special justification" outweighing the alien's constitutionally-protected interest in liberty, as well as "adequate procedural protections" to continue incarceration while the alien litigates his claims.  Id. at 690, 691.

Although a bare majority of Justices sustained the authority of Congress to mandate detention of criminal aliens during administrative removal proceedings in Demore, the opinion of the Court emphasized that such detention would be only "for the brief period necessary for their removal proceedings." 538 U.S. at 513 (emphasis added).  Justice Kennedy, whose concurring opinion provided the fifth vote for the majority opinion in Demore, recognized that a lawful permanent resident "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring).  In Ngo v. INS, 192 F.3d 390, 397 (3d Cir. 1999), our Court of Appeals recognized the applicability of these fundamental principles by explaining that long term detention of an alien ordered removed passes constitutional muster only if "there are adequate and reasonable provisions for the grant of parole . . . and . . . detention is necessary to prevent a risk of flight or a threat to the community."  Our Court of Appeals elaborated that the assessment of flight risk and danger to the community must be made on a current basis.  Id.  "To presume dangerousness to the community and risk of flight based solely on [an alien's] past

record does not satisfy due process." Id. at 398-99.

Furthermore, an alien should not be effectively punished by pursuing applicable legal remedies, such as a stay of removal. As stated by the Sixth Circuit Court of Appeals in Ly v. Hansen, 351 F.3d 263 (6th Cir. 2003):

> An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take.

Id. at 272.

In Lawson v. Gerlinski, 332 F. Supp. 2d 735 (M.D. Pa. 2004), this Court grappled with the question of whether a criminal alien is entitled to consideration for conditional release while litigating a non-frivolous challenge to the execution of a removal order. This Court concluded that at least "where an alien has satisfied the requirements for securing a stay of removal, detention must be justified by facts showing a flight risk or danger to the community." Id. at 746. In other words, an alien who has procured a stay of removal and is facing the prospect of prolonged detention pending adjudication of his or her claims, is entitled to consideration for conditional release.[5] Because the INS has taken the position that Haynes is not eligible for release, it does not appear that he has received the process afforded to those who are eligible

---

[5]It bears noting that to secure a stay of removal an alien must satisfy the traditional four-pronged test for preliminary injunctions, which, of course, include presentation of at least a substantial issue. See Douglas v. Ashcroft, 374 F.3d 230, 233-34 (3d Cir. 2004).

for release after issuance of a final administrative order of removal.

In Ngo, 192 F.3d at 399, our Court of Appeals suggested that procedures that included (a) advance written notice to the alien of an opportunity to present information supporting release, (b) the right to representation by counsel or other individuals, (c) an opportunity for periodic personal interviews, (d) a written explanation for a custody decision, (e) the opportunity for review by INS headquarters, (f) periodic reviews of custody decisions, and (g) a refusal to presume continued detention based upon criminal history, would, if conscientiously applied, satisfy due process concerns.  Such procedures appear to be embodied in 8 C.F.R. § 241.4(i), which govern post-removal order release determinations by the Executive Associate Commissioner for Field Operation for any alien who is not removed within three months after an initial records review made by the Headquarters Post-Order Detention Unit.[6]  The regulations

---

[6] Under 8 C.F.R. § 241.4(i), the HQPDU Director is required to designate a panel to make recommendations to the Executive Associate Commissioner on whether an alien should be released or detained.  The review panel generally consists of two persons.  All recommendations by the two-member review panel must be unanimous.  If the vote of the two-member panel is split, it shall adjourn until a third review panel member is added.  A recommendation by a three-member review panel shall be by majority vote.

Initially and at the beginning of each subsequent review, the HQPDU Director or a review panel shall review the alien's records.  After completing the records review, the HQPDU Director or the review panel may issue a written recommendation that the alien be released.  If the HQPDU Director does not accept a panel's recommendation to grant release after a records review, or if the alien is not recommended for release, a review panel shall personally interview the detainee.  The alien may be accompanied during the interview by a person of his or her choice, subject to reasonable security concerns at the institution's and panel's discretion.  The alien may submit to the review panel any information he or she believes presents a basis for his or her release.  Following the interview and its deliberations, the review panel shall issue a written recommendation that the alien be released or remain in custody pending removal or

also supply the appropriate analytical framework for a decision to continue detention. See 8 C.F.R. § 241.4(d) and (e).[7] These provisions should apply to an alien such as Haynes, who has received a records review and who has been in custody for more than six months after a stay of removal was entered. Otherwise, an alien who poses no threat to the community or flight risk can be detained indefinitely while litigating a substantial challenge to a deportation order. The INS position that an alien such as Haynes is ineligible for consideration for conditional release is inconsistent with the constitutional command that liberty be taken away only for appropriate reasons and only after the affected individual has been afforded a meaningful opportunity to be heard on the appropriateness of detention.

## III. CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus will be granted

---

further review. This written recommendation shall include a brief statement of the factors that the review panel deems material to its recommendation. The Executive Associate Commissioner shall then consider the recommendation and appropriate custody review materials and issue a custody determination after considering the criteria and factors listed in 8 C.F.R. § 241.4(e)-(f).

[7] Under 8 C.F.R. § 241.4(d), an alien may obtain release from administrative confinement by showing that release will not pose a significant risk of flight and danger to the community, to the safety of other persons, or to property pending the alien's removal. Under 8 C.F.R. § 241.4(e), an alien is eligible for release if the review panel and Director of the HQPDU find that the following criteria are met: (1) travel documents are not available or the Service opines that immediate removal is otherwise not practicable or not in the public interest; (2) the detainee is presently a non-violent person; (3) the detainee is likely to remain nonviolent if released; (4) the detainee is not likely to pose a threat to the community following release; (5) the detainee is not likely to violate the conditions of release; and (6) the detainee does not pose a significant flight risk if released.

conditionally. Respondent will be afforded a period of sixty (60) days within which to provide Petitioner the post-removal custody process set forth in 8 C.F.R. § 241.4(i). If such process is not provided, Petitioner is to be released.[8]

                                           **s/ Thomas I. Vanaskie**
                                           Thomas I. Vanaskie, Chief Judge
                                           Middle District of Pennsylvania

---

[8] If Respondent determines that detention of Petitioner should be continued, Petitioner may, of course, commence an appropriate action under 28 U.S.C. § 2241 challenging the detention decision. And, of course, if the Court of Appeals vacates the stay of removal, Respondent will be at liberty to take the action required to effect Petitioner's removal from the United States and to detain him during the removal period.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILFRED HAYNES | : | |
|     Petitioner | : | |
| VS. | : | 3:CV-05-0339 |
| | : | (CHIEF JUDGE VANASKIE) |
| DEPARTMENT OF HOMELAND SECURITY | : | |
|     Respondent | : | |

## ORDER

**NOW, THIS 8th DAY OF JULY, 2005,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The Petition for a Writ of Habeas Corpus is **GRANTED CONDITIONALLY.**

2. Respondent shall undertake a review of Petitioner's custody status in accordance with the provisions of 8 C.F.R. § 241.4(i) within sixty (60) days from the date of this Order.

3. If Respondent fails to provide Petitioner with the process required by 8 C.F.R. § 241.4(i) within sixty (60) days from the date of this Order, Petitioner shall be released from confinement subject to pertinent conditions of supervision.

4. Respondent shall file a status report with this Court no later than August 31, 2005.

5. The Clerk of Court is directed to mark this matter **CLOSED.**

                                                        **s/ Thomas I. Vanaskie**
                                                        Thomas I. Vanaskie, Chief Judge
                                                        Middle District of Pennsylvania

O:\VANASKIE\DAVIES\OPINIONS\haynes3.wpd